**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **P.M.**, on behalf of herself and all others similarly situated,<br>Plaintiff,<br>v.<br>**NOVARTIS PHARMACEUTICALS CORPORATION**,<br>Defendant. | Case No. 2:26-cv-2917<br>Hon. Michael Farbiarz, U.S.D.J.<br>Hon. Jessica S. Allen, U.S.M.J.<br><br>**Motion Return Date: July 20, 2026** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. PRELIMINARY STATEMENT .....1

II. LEGAL STANDARD .....2

III. ARGUMENT .....3

A. PLAINTIFF DID NOT CONSENT TO NOVARTIS' DISCLOSURE OF HER SENSITIVE HEALTH INFORMATION .....3

i. Plaintiff Did Not Consent to the Privacy Policy. .....3

ii. The Privacy Policy Does Not Disclose the Conduct Alleged in the Complaint—On the Contrary, It Does the Opposite. .....5

B. PLAINTIFF HAS ARTICLE III STANDING .....7

i. Plaintiff Alleges a Concrete Injury in Fact .....7

ii. Plaintiff's Injuries are Fairly Traceable to Novartis' Conduct .....11

iii. Plaintiff Properly Brings this Action Against the Pharmaceutical Websites .....12

C. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY .....14

i. Plaintiff states a claim for intrusion upon seclusion. .....14

ii. Plaintiff states a claim for publication of private facts. .....16

iii. Plaintiff has a reasonable expectation of privacy in her Sensitive Health Information, the disclosure of which is highly offensive .....17

D. PLAINTIFF'S NEGLIGENCE CLAIM IS WELL-PLED .....18

E. PLAINTIFF SUFFICIENTLY ALLEGES CLAIMS FOR BREACH OF CONFIDENCE AND BREACH OF FIDUCIARY DUTY .....19

F. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM IS WELL-PLED .....23

G. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS WELL-PLED. .....25

H. PLAINTIFF'S ECPA CLAIM IS PROPER. .....26

i. A Profit Motive does not Immunize Tortious Conduct..... .....26

ii. Novartis' HIPAA violations trigger the crime-tort exception .....29

iii. Novartis' interceptions and disclosures are separate acts. ........32

IV. CONCLUSION ........................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Adair v. CIGNA Corp. Servs., LLC*,
2026 U.S. Dist. LEXIS 23288 (E.D. Pa. Feb. 4, 2026)................................ 15, 22

*Allen v. Quicken Loans, Inc.*,
2018 U.S. Dist. LEXIS 192066 (D.N.J. Nov. 9, 2018) .......................................33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................3

*B.K. v. Eisenhower Medical Center*,
2024 U.S. Dist. LEXIS 67497 (C.D. Cal. Apr. 11, 2024) ...................................33

*B.N. v. Or. Reprod. Med., LLC*,
2025 U.S. Dist. LEXIS 222638 (D. Or. Nov. 12, 2025).......................................28

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024)...................................................................................9

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ...............................16

*Bray v. Gamestop Corp.*,
2018 U.S. Dist. LEXIS 226220 (D. Del. Mar. 16, 2018)....................................24

*Burke v. Weight Watchers Int'l, Inc.*,
983 F. Supp. 2d 478 (D.N.J. 2013) .....................................................................13

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)...................................................................................29

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ...................... 28, 32

*Castillo v. Seagate Tech., LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sept. 14, 2016)......................... 23, 24

*Culley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024).....................................15

*Citizens Bank of Pa. v. Reimbursement Techs., Inc.*,
2014 U.S. Dist. LEXIS 82098 (E.D. Pa. June 16, 2014) ....................................19

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022)...................................................................................8

*Cohen v. Northeast Radiology, P.C.*,
2021 U.S. Dist. LEXIS 16497 (S.D.N.Y. Jan. 28, 2021) ....................................23

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025)....................................................................10
*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .........................................................29
*Cottrell v. Alcon Labs.*,
874 F.3d 154 (3d Cir. 2017)....................................................................11
*Cox v. Chrysler Grp.*,
2015 U.S. Dist. LEXIS 133393 (D.N.J. Sep. 30, 2015).......................................13
*Dennis v. MyLife.Com, Inc.*,
2021 U.S. Dist. LEXIS 243050 (D.N.J. Dec. 20, 2021) .......................................9
*Derfus v. City of Chicago*,
42 F. Supp. 3d 888 (7th Cir. 2014) ...........................................................3
*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023).......................................................28
*Doe v. Tenet Healthcare*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .........................................................28
*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013)....................................................................11
*Gaddy v. Long & Foster Cos.*, 2022 U.S. Dist. LEXIS 46657 (D.N.J. Mar. 15, 2022)..............................................................................................26
*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024)..................................22
*Haas v. Pittsburgh Nat'l Bank*,
526 F.2d 1083 (3d Cir. 1975)....................................................................12
*Hassan v. City of N.Y.*,
804 F.3d 277 (3d Cir. 2015)....................................................................12
*I.T. v. ChoicePoint LLC*, 2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025)..............................................................................................33
*Impact Protective Equip. v. Xtech Protective Equip.*,
2021 N.J. Super. Unpub. LEXIS 624 (Super. Ct. App. Div. Apr. 14, 2021) ........26
*In re Am. Fin. Res., Inc.*, 2023 U.S. Dist. LEXIS 108411 (D.N.J. Mar. 29, 2023) 24, 25
*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 U.S. Dist. LEXIS 240360 (D.N.J. Dec. 16, 2021)...................................... 9, 12, 23, 25

*In re BetMGM Data Breach Litig.*,
2024 U.S. Dist. LEXIS 245132 (D.N.J. Nov. 20, 2024) ....................................23
*In re Canon U.S.A. Data Breach Litig.*,
2022 U.S. Dist. LEXIS 248197 (E.D.N.Y. Mar. 15, 2022) ................................21
*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..........................................................16
*In re Gerber Probiotic Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 145437 (D.N.J. Oct. 6, 2014) ..........................................................................13
*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) ................................................................................8, 9
*In re Google Inc.*, 806 F.3d 125 (3d Cir. 2015).................................... 8, 10, 18, 29
*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) ......................28
*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017) .................................................................................... 8, 9, 10
*In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 176969 (D.N.J. Dec. 9, 2013) ......................................................... 13, 14
In re Meta Pixel Healthcare Litig.,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...........................................................7
*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)........................................................................ passim
*In re Rutter's Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) ......................................................... 3, 24
*In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781 (D.N.J. 2025)...........10
*In re U.S. Vision Data Breach Litig.*,
732 F. Supp. 3d 369 (D.N.J. 2024) ............................................................ 22, 23
*Kamal v. J. Crew Grp., Inc.*,
918 F.3d 102 (3d Cir. 2019)......................................................................... 19, 20
*Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ..........................................................................................................29
*Knudsen v. MetLife Grp., Inc.*,
117 F.4th 570 (3d Cir. 2024).............................................................................8
*Kuzian v. Electrolux Home Prods.*,
937 F. Supp. 2d 599 (D.N.J. 2013) ..................................................................14

*McKelvey v. Pierce*,
173 N.J. 26, 800 A.2d 840, 859 (N.J. 2002)........................................................22
*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ...............................................................29
*Minn. Life Ins. Co. v. Cooke*,
No. 2:20-cv-14326 (WJM), 2021 U.S. Dist. LEXIS 213801 (D.N.J. Nov. 4, 2021)........................................................................................................18
*Moore v. Kulicke & Soffa Indus.*,
318 F.3d 561 (3d Cir. 2003)...............................................................................4
*Muraski v. Penn Highlands Healthcare, Inc.*,
2026 U.S. Dist. LEXIS 26490 (W.D. Pa. Feb. 9, 2026).......................................18
*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024)...................... 15, 18, 29
*N.J. Carpenters v. Tishman Constr. Corp.*,
760 F.3d 297 (3d Cir. 2014)...............................................................................31
*Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994)...................................................................................12
*Neuss v. Rubi Rose, LLC*,
2017 U.S. Dist. LEXIS 83444 (D.N.J. May 31, 2017) .......................................13
*New Concepts for Living, Inc. v. Commc'ns Workers Loc. 1040*, 2021 U.S. Dist. LEXIS 102132 (D.N.J. May 28, 2021) ......................................................... 27, 29
*Nite Glow Indus. v. Cent. Garden & Pet Co.*, 2025 U.S. Dist. LEXIS 192955 (D.N.J. Sep. 30, 2025) ...........................................................................................26
*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
135 F.3d 1260 (9th Cir. 1998).............................................................................15
*Oliver v. Noom, Inc.*,
No. 2:22-cv-01857-WSS, ECF 24 (W.D. Pa. Jun. 9, 2023)................................15
*Pattison v. Teladoc Health, Inc.*,
2025 U.S. Dist. LEXIS 121044 (S.D.N.Y. June 25, 2025) .......................... 20, 21
*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020)....................................................................13
*R.C. v. Walgreen*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .................................................... 17, 28, 33

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025)................................ 29, 33
*Read v. Profeta*,
397 F. Supp. 3d 597 (D.N.J. 2019).....................................................................22
*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)..............................................................28
*Rudolph v. Hudson's Bay Co.*,
2019 U.S. Dist. LEXIS 77665 (S.D.N.Y. May 7, 2019); .....................................23
*Salas v. Acuity-CHS, LLC*,
2023 U.S. Dist. LEXIS 54825 (D. Del. Mar. 30, 2023).......................................25
*Sanchez-Scott v. Alza Pharm.*,
103 Cal. Rptr. 2d 410 (Ct. App. 2001) ...............................................................15
*Santoro v. Tower Health*,
2024 U.S. Dist. LEXIS 74348 (E.D. Pa. Apr. 24, 2024).......................................17
*Smith v. Datla*,
451 N.J. Super. 82 (Super. Ct. App. Div. 2017) ...................................................17
*Smith v. Pro Custom Solar LLC*,
2021 U.S. Dist. LEXIS 8616 (D.N.J. Jan. 15, 2021) ..............................................4
*Spellman v. Express Dynamics, LLC*,
150 F. Supp. 3d 378 (D.N.J. 2015).....................................................................25
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ......................................................................................7, 8
*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025).......................................28
*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
877 F. Supp. 2d 192 (D.N.J. 2012).....................................................................26
*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999)............................................................................27
*Theys v. Dental Intel., Inc.*,
2026 U.S. Dist. LEXIS 46654 (N.D. Ill. Mar. 6, 2026) .......................................17
*Thomas v. Papa Johns Int'l, Inc.*,
2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024).......................................17
*Tobin v. Samsung Elecs. Am.*,
2019 U.S. Dist. LEXIS 52360 (D.N.J. Mar. 27, 2019) .........................................13

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) ....................................21
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..............................................................................................8
*United States DOJ v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) ..................................................................................... 14, 15
*United States v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980)...............................................................................18
*Vorhees v. Tolia*,
2020 U.S. Dist. LEXIS 46150 (D.N.J. Mar. 17, 2020) ........................................20
*Wallace v. Health Quest Sys., Inc.*,
2021 U.S. Dist. LEXIS 54557 (S.D.N.Y. Mar. 23, 2021) ....................................21
*Weston v. Lefiti*,
2024 U.S. App. LEXIS 27181 (9th Cir. Oct. 25, 2024)) ......................................33
*Williams v. TMC Health*,
2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sep. 30, 2024) ....................................26

## I. PRELIMINARY STATEMENT

Many American families have difficulty affording their prescription medications. To ensure that patients use their products, most pharmaceutical manufacturers offer a variety of programs to reduce the out-of-pocket cost of medications. Though the manufacturers typically describe these programs as financial assistance to patients who cannot afford their medications, studies show that these financial assistance programs are well-funded marketing operations, not charity.[1] They increase demand for and adherence to medications while supporting higher list prices and, in turn, increase profits for the manufacturers.

Defendant Novartis Pharmaceuticals Corporation ("Defendant" or "Novartis") offers discount cards ("Savings Cards") through patient savings programs for some medications. The cards are personalized – they allow a specific person to access a discount for a specific medication, and pharmacies enter them as secondary insurance in their computer systems. Plaintiff P.M. ("Plaintiff") obtained such a card with regards to her prescription for Kisqali, a breast cancer treatment drug manufactured by Novartis. To obtain her savings card, Plaintiff was required to register for the Kisqali patient savings program through www.us.kisqali.com (the "Website"), a website maintained by Novartis. When she did so, she expected that Novartis would maintain the privacy of her medical information. Unfortunately, it did not. Unbeknownst to Plaintiff, Novartis installed advertising surveillance software, including third-party tracking pixels, produced by Google and Contentsquare (the "Tracking Tools") on the Website and, in exchange for advanced marketing and advertising services, allowed the internet behemoth to collect sensitive personally identifiable and protected health information from users of the Website for the purpose of engaging in targeted advertising. When Plaintiff visited

[1] *See* ECF No. 1 ("Complaint" or "Compl.") ¶ 59.

the Website, these Tracking Tools collected and transmitted her sensitive information to Google and Contentsquare, including the fact that she is prescribed Kisqali, the fact that she enrolled in the Kisqali patient savings program, and her specific medical diagnosis (collectively, the "Sensitive Health Information"). Compl. ¶ 59.

In its Motion to Dismiss (the "Motion" or "Mot."), Novartis does not deny installing the Tracking Tools on the Website or that Plaintiff's Sensitive Health Information was transmitted to the largest advertising company in the world as a result. Instead, it attempts to evade liability by unavailingly arguing that Plaintiff consented to its disclosures, managing to misrepresent almost every aspect of its own Website in the process including the operation of its "Privacy Banner" (which does not prevent user from being tracked even if they affirmatively choose to "Deny" Tracking Tool use), the timing of its collection and disclosure of Website users' Sensitive Health Information (which occur before a user ever sees the textual notice Novartis relies on for express consent), and even the plain terms of its Privacy Policy (in which Novartis explicitly promises not to share health information for targeted advertising).[2] Neither this, nor any of Novartis' other arguments can prevail. Novartis' unauthorized disclosure of Plaintiff's Sensitive Health Information both inflicted a cognizable privacy injury under Article III, and satisfies the elements of every claim asserted by Plaintiff. For these reasons and those set forth herein, Novartis' Motion to Dismiss should be denied.

## II. LEGAL STANDARD

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion challenges the legal sufficiency of a complaint, not the merits of the case. *See, e.g.,*

---

[2] *See generally*, Declaration of Sonjay Singh ISO Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Singh Decl."), filed contemporaneously herewith.

*Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). The Court evaluates whether "well-pleaded, nonconclusory factual allegation[s]" in the complaint "state[] a plausible claim for relief." *In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 522 (M.D. Pa. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff does need not to show that she will "ultimately prevail," but merely must "raise a right to relief above the speculative level." Courts must deny a motion to dismiss if the complaint "state[s] a claim to relief that is plausible on its face." *Id*.

## III. ARGUMENT

### A. PLAINTIFF DID NOT CONSENT TO NOVARTIS' DISCLOSURE OF HER SENSITIVE HEALTH INFORMATION

Throughout its Motion, Novartis repeatedly claims that Plaintiff "consented to the data practices at issue" by consenting to its Privacy Policy. Mot. at 10. As explained further below, this argument fails for at least two independent reasons: (1) Novartis cannot establish that Plaintiff actually consented to the Privacy Policy, and (2) even if it could, the Privacy Policy expressly promises that it will not disclose Sensitive Health Information to advertisers.

#### i. Plaintiff Did Not Consent to the Privacy Policy

1. <u>The Privacy Banner Does Not Establish Plaintiff's Consent.</u>

The Website has a Privacy Banner on the bottom of the screen with two options: "Accept" and "Decline." Singh Decl. ¶ 4 (fig. 1). The text on the Privacy Banner states: '[i]f you click 'Accept' below, we will use optional cookies and similar technologies to collect and disclose your data for targeted ads, social media, and performance and analytics purposes[,]" referring the user to the Privacy Policy to learn more about how Novartis collects and discloses user information. *Id*. Unfortunately, this representation is a lie. The Website does not track a user only after she clicks "Accept" but instead starts collecting and disclosing the user's data

using the Tracking Tools from the moment that the Website loads. *Id.* ¶ 6. Worse still, even if the user ***affirmatively clicks "Decline,"*** the Tracking Tools ***do not stop tracking***. *Id.* ¶ 5 (figs. 2-3). The choice offered by the Privacy Banner is thus illusory. The Website has already started tracking the user through the Tracking Tools before she ever sees the Privacy Banner and continues to do so even if she uses the Privacy Banner to decline tracking for advertising and analytics purposes. Novartis cannot establish Plaintiff's consent through such a Privacy Banner.

***First***, consent "is an affirmative defense; thus it is not the plaintiff's burden to pre-rebut it in order to avoid dismiss." *Smith v. Pro Custom Solar LLC*, 2021 U.S. Dist. LEXIS 8616, at *8 (D.N.J. Jan. 15, 2021). Rather, "the defendant has both the burden of production and the burden of persuasion for the affirmative defense." *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003). Yet, Novartis provides no evidence whatsoever establishing how, if at all, Plaintiff interacted with the Privacy Banner. Absent such evidence, the Court cannot make any inference about any use of the Privacy Banner by Plaintiff because whether she clicked "Accept," "Deny," or nothing at all, the Tracking Tools would have transmitted the Sensitive Health Information alleged in the Complaint regardless.[3]

***Second***, a finding of consent necessarily requires the existence of an option not to consent. Someone with no option other than to be subjected to wrongdoing is a victim, not a willing participant. Thus, no possible interaction that Plaintiff may have had with the Privacy Banner could establish her consent to Novartis' use of the Tracking Tools because Plaintiff was deprived of any alternative by Novartis' misrepresentations on the Privacy Banner.

[3] Even if the burden of providing this evidence did not rest on Novartis, Plaintiff would be unable to clarify this issue. Plaintiff does not even remember seeing the Privacy Banner, let alone interacting with it.

For both reasons, Novartis cannot establish Plaintiff's consent through invocation of its deceptive Privacy Banner.

2. The Sign-Up Page Disclosure Does Not Establish Plaintiff's Consent.

Novartis argues that through the process of signing up for its saving program on the Website, Plaintiff had to agree to its Privacy Policy. However, Novartis fails to provide the entirety of the sign-up process, which spans across six consecutive webpages. *See* Singh Decl. ¶ 7 (figs. 4-10). While the notice of the Privacy Policy referenced by Novartis is included only on the ***last*** page of this multistep sign-up process, Plaintiff's Sensitive Health Information was disclosed to Google and Contentsquare when she provided the information requested by the savings program application ***before*** she ever reached that final page. *Id*. ¶¶ 8-9. Novartis thus cannot claim that the final page's notice establishes Plaintiff's consent because it had already disclosed her Sensitive Health Information before that notice was presented to her. *Id*.

**ii. The Privacy Policy Does Not Disclose the Conduct Alleged in the Complaint—On the Contrary, It Does the Opposite.**

In its Motion, Novartis quotes from the Privacy Policy ten separate times. Mot. at 6-7, 13, 20. Yet, it is only once that Novartis provides so much as a ***sentence*** of the Privacy Policy in its entirety with no portion omitted or modified. *Id*. The reason for this revisioning is simple: the full text of the Privacy Policy contradicts the Franken-quotes that Novartis uses in its Motion. For example, Novartis quotes from the Privacy Policy extensively in the following line to argue that:

> The Privacy Policy itself plainly states that NPC 'collect[s] personal information that [users] voluntarily provide' including 'health and/or medical conditions' when they use NPC's programs or services, and that NPC and its 'third-party service providers may collect information automatically' from users' devices, with the user's privacy choices, and

> that this data 'may be disclosed' to third parties and used for 'delivering advertisements.'

Mot. at 12-13 (quoting Goldberg Decl. Ex. A at 1) (modifications in original). This single sentence is a veritable mosaic of mismatched sentence fragments. It is also a complete misrepresentation of the Privacy Policy. In reality, the Privacy Policy states the exact opposite: that "Sensitive Personal Information," including information "concerning an individual's health," "health conditions" or "medical treatment," is ***not*** sold to third parties and ***not*** used for targeted advertising purposes. Goldberg Decl. Ex. A at 11-13. This cannot possibly be misunderstood. The Privacy Policy even lays it out in a chart:

| **Categories of Personal Information** | **Disclosed to Which Categories of Third Parties for Operational Business Purposes** | **Sold to Which Categories of Third Parties** | **Shared with Which Categories of Third Parties for Cross-Context Behavioral or Targeted Advertising** |
|---|---|---|---|
| . . . | | | |
| **Sensitive Personal Information**, including: <br>• Government-issued identifier (e.g., Social Security number); precise geolocation information; <br>• Information concerning an individual's health, including mental or physical health conditions, medical history, and medical treatment or diagnosis by a health care professional; and | Affiliates; service providers; social networks; business partners; legal authorities | None | None |

Figure 1. *Health Tracking Disclosures in Novartis Privacy Policy Chart.*

*Id*. Absent Novartis' editorializing, no reasonable Website user could read these representations and conclude that Novartis might "transmit personally identifiable and sensitive health information pertaining to [the user's] medical conditions, prescriptions, and medical expenses…to unauthorized third parties" to be used "as fuel for their massive, targeted advertising enterprise." Compl. ¶¶ 6-7. Thus, even assuming, *arguendo*, that Novartis could show Plaintiff's consent to the Privacy Policy, it still could not show that Plaintiff consented to its disclosures of her Sensitive Health Information through the Tracking Tools. The Privacy Policy indeed proves the reverse: that Novartis promised not to disclose Plaintiff's Sensitive Health Information to third-party advertisers and then did so anyway.[4]

### B. PLAINTIFF HAS ARTICLE III STANDING

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Novartis challenges the first and second elements of Article III standing, asserting that Plaintiff cannot establish an injury in fact, nor that any injury is fairly traceable to its conduct. *See* Mot. at 16. As explained below, courts routinely recognize that the unauthorized disclosure of sensitive,

[4] Moreover, even if every one of Novartis' factual representations were accurate and undisputed, its consent argument would still fail. None of Novartis' purported consent mechanisms comply with HIPAA's requirements for a medical disclosure authorization. As a reasonable person would expect a HIPAA-compliant disclosure before their Sensitive Health Information was shared, Novartis cannot establish adequate notice of its practices here, where it failed to provide one. *See In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022) (declining to find consent in Tracking Tool case because a "reasonable user" reading policy would not expect disclosure of Sensitive Health Information in absence of "HIPAA-compliant authorization").

personally identifying information like that at issue here constitutes an injury in fact. As these disclosures were the direct result of Novartis' decision to implement the Tracking Tools on the Kisqali Website, Plaintiff has established Article III standing.

**i. Plaintiff Alleges a Concrete Injury in Fact**

"Establishing an injury-in-fact at the motion to dismiss stage 'is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that [a] claimant allege[] some specific, identifiable trifle of injury.'" *Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 577 (3d Cir. 2024) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017)). An alleged injury must be "'concrete,' meaning 'real, and not abstract.'" *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154 (3d Cir. 2022) (quoting *Spokeo*, 578 U.S. at 340). However, "[t]he fact that an injury is intangible—that is, it does not represent a purely physical or monetary harm to the plaintiff—does not prevent it from nonetheless being concrete, as various intangible harms have been 'traditionally recognized as providing a basis for lawsuits in American courts.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). Intangible harms "include, for example, reputational harms, ***disclosure of private information***, and ***intrusion upon seclusion***." *TransUnion*, 594 U.S. at 425 (emphasis added). "[I]n some cases an injury-in-fact 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016) (quoting *In re Google Inc.*, 806 F.3d 125, 134 (3d Cir. 2015)). "Indeed, as Justice Thomas has explained, private actions to remedy intrusions on the private sphere trace back to England, where a property owner needed only to show that another person placed a foot on his property to establish a traditional case or controversy." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (citing *Spokeo*, 578 U.S. at 344-45 (Thomas, J., concurring)).

As Novartis acknowledges, "[t]o establish Article III standing based on an alleged privacy injury, Plaintiff must point to a close analog at common law, such as intrusion upon seclusion or public disclosure of private facts." Mot. at 16 (quoting *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024)). She does so. Plaintiff's statutory and common law claims arise out of Novartis' unlawful disclosures of her protected Sensitive Health Information and consequent invasion of her privacy. "Numerous federal and state laws prohibit certain kinds of disclosures, and private companies often promise to protect their customers' privacy in ways that may be enforceable in court." *Nickelodeon*, 827 F.3d at 267. Courts have observed that "'privacy torts have become well-ensconced in the fabric of American law[,]' [a]nd with privacy torts, ***improper dissemination of information can itself constitute a cognizable injury***." *Horizon*, 846 F.3d at 638-39 (quoting David A. Elder, *Privacy Torts* § 1:1 (2016)) (emphasis added). "History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization" and the idea "that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data. . .[is] untenable." *Google Cookie*, 934 F.3d at 325. Accordingly, courts in this District find unauthorized internet surveillance, like the kind alleged by Plaintiff, to be a concrete harm. *See Dennis v. MyLife.Com, Inc.*, 2021 U.S. Dist. LEXIS 243050, at *10 (D.N.J. Dec. 20, 2021) ("Applying the Supreme Court's reasoning in *Transunion* to this case, both [p]laintiffs have pleaded a concrete harm under a disclosure theory, as they allege that [defendant] disseminated private. . .information about them to third parties through their website."); *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 U.S. Dist. LEXIS 240360, at *38 (D.N.J. Dec. 16, 2021) ("[T]he unauthorized disclosure of personal information itself constitutes 'a clear de facto injury'") (quoting *Horizon*, 846

F.3d at 636)). Likewise, Plaintiff alleges "the unlawful disclosure of legally protected information" which is "a clear *de facto* injury" and one "that Congress has long provided plaintiffs with the right to seek redress for[.]" *Nickelodeon*, 827 F.3d at 274; *see also* § III(C), *infra*.

Novartis' remaining arguments are equally unavailing. "Though the 'injury must affect the plaintiff in a personal and individual way,' this standard does not demand that a plaintiff suffer any particular type of harm to have standing." *In re Google*, 806 F.3d at 134. "Intangible harms that may give rise to standing also include harms that may be difficult to prove or measure[.]" *Nickelodeon*, 827 F.3d at 273 (quotations omitted). And "'[d]amages for a violation of an individual's privacy are a quintessential example of damages that are uncertain and possibly unmeasurable[.]'" *Horizon*, 846 F.3d at 638-39 (quoting *Pichler v. UNITE*, 542 F.3d 380, 399 (3d Cir. 2008)). Indeed, the Third Circuit has found the receipt of targeted advertisements as a result of embedded tracking cookies sufficient to establish standing. *In re Google Inc.*, 806 F.3d at 134-35.

Novartis' reliance on *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 799 (D.N.J. 2025) is misplaced. There, the "decisively fatal" factor for the plaintiffs' standing was the nature of the information disclosed—names, addresses, other contact and demographic information, and device information. *Id.* at 796. The court compared these disclosures to those in *Clemens* (social security numbers, birth dates, and names), *Horizon* (name and demographic information, Social Security number and/or limited clinical information), and other cases involving, *inter alia*, health insurance, diagnosis, prescription, treatment, and claims information, concluding that the *Samsung* plaintiffs' allegations involved "non-sensitive information." *Id.* at 797. Similarly, in *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025), the court found no standing because the allegedly misappropriated information—relating to Plaintiffs' use of a video game retail website—was not

"personal or sensitive," so it was not a "[d]isclosure of private information." *Id*. at 158, 160. In contrast, Plaintiff alleges the disclosure of personally identifiable and sensitive information pertaining to her medical conditions, prescriptions, and medical expenses. Compl. ¶¶ 6, 19. Unlike the speculative possibility that a hacker might someday access the plaintiffs' personal information in *Reilly v. Ceridian Corp.*, these allegations are not hypothetical or conclusory. *See* 664 F.3d 38, 42 (3d Cir. 2011). Plaintiff alleges that she visited the Website and provided her Sensitive Health Information to Novartis to apply for a Savings Card, that Novartis disclosed her Sensitive Health Information to unauthorized third parties through the Tracking Tools, and that Plaintiff received targeted online advertisements for products and services related to her medical condition as a result of Novartis' disclosures. Compl. ¶¶ 18-22. This is sufficient to show that Plaintiff has "a direct stake in the outcome of [the] litigation[.]" *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017).

Finally, "[t]o the extent that the [D]efendants believe that the alleged conduct implicates interests that are not legally protected, this is an issue of the merits rather than of standing." *In re Google Inc.*, 806 F.3d at 135. Conflating the two "would thwart a major function of the standing doctrine — to avoid premature judicial involvement in resolution of issues on the merits." *Cottrell*, 874 F.3d at 164 (quotations omitted).

**ii. Plaintiff's Injuries are Fairly Traceable to Novartis' Conduct.**

The Third Circuit has described traceability "as akin to 'but for' causation and found the traceability requirement met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013).

Plaintiff alleges that Novartis intentionally configured the Tracking Tools installed on the Website to capture and transmit user data beyond what would be

disclosed in the Tracking Tools' default state, including her Sensitive Health Information, to unauthorized third parties, including Google and Contentsquare. Compl. ¶ 58, 74. At this stage, this is enough to allege that her injuries were caused by—and fairly traceable to—Novartis' conduct. *See e.g., Am. Med.*, 2021 U.S. Dist. LEXIS 240360, at *51. "[T]he participation of third parties does not defeat traceability where, as here, a plaintiff alleges facts suggesting a nonspeculative causal link." *Id.*

Novartis' argument to the contrary misapprehends the nature of Plaintiff's claims. Plaintiff need not allege that the targeted advertisements she saw were placed by Novartis or promoted Novartis' products to establish traceability, because the unlawful disclosure of Plaintiff's Sensitive Health Information "itself is the legally cognizable injury." *Hassan v. City of N.Y.*, 804 F.3d 277, 293 (3d Cir. 2015). Novartis' contention that "only the collateral consequences of the [disclosure]—rather than the [disclosure] itself—could count as Article III injury" equates "injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation…That is incorrect." *Id.*

**iii. Plaintiff's Putative Class Allegations Relating to the Other Pharmaceutical Websites Developed and Maintained by Novartis are Proper.**

"Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). The Third Circuit has held that, notwithstanding the fact that a plaintiff lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two "closely related" claims against the same defendant. *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1089 (3d Cir. 1975). In line with the holding in *Haas*,

courts in this District have consistently denied dismissal where "the basis for each of the claims. . .is the same, the products [at issue] are closely related, and the [d]efendants are the same." *Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454, at *47 (D.N.J. June 25, 2012) (denying motion to dismiss as to plaintiffs' lack of standing to pursue claims for products they did not purchase); *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 482 (D.N.J. 2013) (same); *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 873 (D.N.J. 2020) (same); *Cox v. Chrysler Grp.*, 2015 U.S. Dist. LEXIS 133393, at *47 (D.N.J. Sep. 30, 2015) (same); *In re Gerber Probiotic Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 145437, at *16 (D.N.J. Oct. 6, 2014) (same); *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 176969, at *18 (D.N.J. Dec. 9, 2013) (same); *Neuss v. Rubi Rose, LLC*, 2017 U.S. Dist. LEXIS 83444, at *15 (D.N.J. May 31, 2017) (same).

Like in these cases, Plaintiff "alleges that all potential class members suffered a similar harm under similar circumstances[.]" *Tobin v. Samsung Elecs. Am.*, 2019 U.S. Dist. LEXIS 52360, at *25 (D.N.J. Mar. 27, 2019) (denying as premature motion to dismiss for lack of standing on the basis that the plaintiff did not have standing to sue for defective televisions that he did not personally purchase). Every one of the Pharmaceutical Websites was created by Novartis for the same purpose: to market their pharmaceutical products to its patients, including by offering patient savings programs. Compl. ¶ 4. Just as with the Kisqali Website, Novartis also installed Tracking Tools on the other Pharmaceutical Websites resulting in the unauthorized disclosure of putative class members' Sensitive Health Information. *See id.* ¶¶ 59-73 (figs. 1-14). Thus, Plaintiff's class claims are proper because they arise out of the same conduct as her individual claims (Novartis' installation of Tracking Tools on the Pharmaceutical Websites) and seek recompense for the same injury (the unauthorized disclosure of the Sensitive Health Information

provided by putative class members while applying for Novartis' patient saving programs).

In any case, whether Plaintiff has standing to represent a class of individuals who visited the Pharmaceutical Websites that she did not personally visit "is an issue that is not yet ripe" prior to the class certification stage. *Kuzian v. Electrolux Home Prods.*, 937 F. Supp. 2d 599, 610 (D.N.J. 2013) (denying motion to dismiss and observing that "discovery will be required prior to a motion for class certification in order to determine the proper scope of the proposed class and whether [the named] plaintiffs have standing to pursue claims on behalf of others."). This Court should therefore defer this inquiry until Plaintiff seeks certification of the putative class. *See e.g., L'Oreal Wrinkle Cream*, 2013 U.S. Dist. LEXIS 176969, at *18 (denying Rule 12(b)(1) motion to dismiss and deferring the standing inquiry until the class certification stage).

## C. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

### i. Plaintiff states a claim for intrusion upon seclusion

In *United States DOJ v. Reporters Comm. for Freedom of Press*, the Supreme Court rejected a "cramped notion of personal privacy" which fails to recognize an individual's right to control the flow of their sensitive, personal information. 489 U.S. 749, 763-64 (1989). It is this cramped notion that Novartis propounds here.

A claim for intrusion upon seclusion lies where a defendant has "intentional[ly] interfere[d] with [the plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns." *Cook*, 148 F.4th at 160. A "company may commit intrusion upon seclusion by collecting information using duplicitous [data tracking] tactics[.]" *Nickelodeon*, 827 F.3d at 295. Courts routinely find that intrusion upon seclusion can occur when information voluntarily provided to a medical provider, for specific purposes, is used for other purposes. For example, in *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269-70

(9th Cir. 1998), employees voluntarily provided blood and urine samples during job-related medical examinations. The employer also tested those samples for syphilis, pregnancy, and sickle cell traits, even though "there was little, if any, 'overlap' between what plaintiffs consented to and the testing at issue." *Id*. (reversing summary judgment); *see also Sanchez-Scott v. Alza Pharm.*, 103 Cal. Rptr. 2d 410, 419 (Ct. App. 2001) (reversing dismissal of intrusion upon seclusion claim where doctor allegedly obtained plaintiff's consent to a breast examination in front of a drug salesperson without disclosing the salesperson was not a medical professional).[5]

As the Supreme Court has explained: "the right of privacy is the right to control the flow of information concerning the details of one's individuality." *Reporters*, 489 U.S. at 764 n.16 (citation omitted). And the "Third Circuit has held a website operator commits an intentional intrusion where the website operator tracks plaintiffs' online behavior 'without their permission to do so.'" *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 U.S. Dist. LEXIS 177625, at *16 (E.D. Pa. Sep. 30, 2024) (quoting *Nickelodeon*, 827 F.3d at 293-94). Here, Plaintiff alleges that Novartis shared her confidential, HIPAA-protected information without authorization. Numerous courts have found that such allegations plead a claim for intrusion upon seclusion. *See*, n. 5, *supra*. The Court should find the same here.

---

[5] *See also McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *31 (D. Ariz. May 10, 2024) (intrusion upon seclusion adequately pled on medical website when plaintiffs "were unaware that their search terms would be disclosed to third parties"); *D'Antonio v. Smith & Wesson Inc.*, 2026 U.S. Dist. LEXIS 32257, at *6-7 (N.D. Cal. Feb. 17, 2026) (sustaining invasion of privacy claim where defendant "voluntarily 'chose,' 'caused,' and 'allowed' third-party tracking tools to integrate into its website"); *Adair v. CIGNA Corp. Servs., LLC*, 2026 U.S. Dist. LEXIS 23288, at *27 (E.D. Pa. Feb. 4, 2026) ("there is an acute loss of privacy that closely resembles the harm of intrusion upon seclusion when tracking code secretly harvests an individual's medical information").

**ii. Plaintiff states a claim for publication of private facts**

Under New Jersey law, a "'defendant is liable under [publication of private facts] when he gives publicity to a matter concerning the private life of another … if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Cook*, 148 F.4th at 159 (quoting Restatement (Second) of Torts § 652D).

In her Complaint, Plaintiff alleges that her Sensitive Health Information was transmitted to the Tracking Tool Providers, not merely for Novartis' own use but for use in the Providers' mass advertising surveillance apparatus. ¶¶ 7-9. Indeed, Google's advertising network alone includes the operators of ***74-percent*** of all web traffic. *Id.* ¶ 34. The Tracking Tool Providers make no secret about the reason for this surveillance: all of the information they gather is used to sell targeted advertising to third parties. *Id.* ¶¶ 7-8, 30, 33. The Tracking Tool Providers "aggregate the user information that they collect from third-party websites into 'advertising profiles' consisting of all of the data that they have collected about a given user" which they then use to allow "its clients to target internet users" based on that information. *Id.* ¶ 33. Courts have found such allegations to properly plead a claim for invasion of privacy under identical circumstances. *See, e.g., Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *20-21 (W.D. Wis. June 28, 2024) (finding sufficient publicity where plaintiffs alleged that information disclosed through tracking pixel was transmitted to "various technology companies that employ hundreds of thousands of employees who have access to this information"); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 787 (N.D. Cal. 2019) (same where plaintiffs alleged defendant made their internet data "widely available to third parties in a variety of ways; and as a result, third parties were able to develop detailed dossiers on the plaintiffs including information about their locations, their religious and political preferences, their video-watching habits, and other sensitive matters");

*Theys v. Dental Intel., Inc.*, 2026 U.S. Dist. LEXIS 46654, at *22 (N.D. Ill. Mar. 6, 2026) (same).

Novartis incorrectly claims that Plaintiff's Sensitive Health Information was disclosed "only to Google and Contentsquare." Mot. at 19. As explained above, Plaintiff alleges not just disclosure to those vendors but also to their massive advertising networks. Moreover, Novartis' argument imposes a far stricter standard than is called for under New Jersey law. For example, in *Smith v. Datla*, the Superior Court of New Jersey held that the unauthorized disclosure of the plaintiff's HIV status to a single individual, who was not even named or described in the operative complaint, was sufficient to state a claim for public disclosure of private facts. 451 N.J. Super. 82, 93 (Super. Ct. App. Div. 2017). Novartis does not even try to explain how New Jersey law can allow a claim for publication of private facts to proceed based on a single disclosure to a single unidentified individual but foreclose upon Plaintiff's claims where their Sensitive Health Information was disclosed to some of the largest advertising companies in the world.

**iii. Plaintiff has a reasonable expectation of privacy in her Sensitive Health Information, the disclosure of which is highly offensive.**

Novartis unsuccessfully attempts to recharacterize Plaintiff's allegations to mere disclosure of that fact that she had been "'browsing websites[.]'" Mot. at 23 (quoting *Santoro v. Tower Health*, 2024 U.S. Dist. LEXIS 74348, at *1 (E.D. Pa. Apr. 24, 2024), *on appeal*). But Plaintiff does not take issue with the use of all "website technologies."[6] *Id.* at 16-17. Instead, the invasion of privacy here concerns

[6] Additionally, courts have refrained from making a blanket assertion that "there can never be a reasonable expectation of privacy over internet activity." *Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024); *see also R.C. v. Walgreen*, 733 F. Supp. 3d 876, 891 (C.D. Cal. 2024) ("The Court disagrees with Defendant's attempt to paint a bright line barring privacy claims based on website browsing activity[.]").

Plaintiff's private health information. The Third Circuit has long recognized that "[i]nformation about one's body and state of health is matter in which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980). Indeed, at the pleadings stage, courts in this District have found that a "[d]efendant's status as a healthcare provider, coupled with [promises not to collect personal information], create[s] an expectation of privacy that would be 'highly offensive' to breach." *Murphy*, 2024 U.S. Dist. LEXIS 177625, at *16-17; *see also Muraski v. Penn Highlands Healthcare, Inc.*, 2026 U.S. Dist. LEXIS 26490, at *5 (W.D. Pa. Feb. 9, 2026) ("Under HIPAA, Plaintiffs and class members have a reasonable expectation of privacy in their data, including sensitive medical and other personal information, communicated to Defendant through its website."). As discussed in § III(H)(ii), *infra*, Novartis is a healthcare provider with obligations under HIPAA to prevent the unauthorized disclosure of Sensitive Health Information. And as discussed in § III(A), *supra*, Novartis' purported disclosures "amounts to a smokescreen." *In re Google Inc.*, 806 F.3d 125, 150 (3d Cir. 2015). Users like Plaintiff and Class Members "are entitled to deny consent, and they are entitled to rely on the public promises of the companies they deal with." *Id.* at 151. Based on these facts, a reasonable fact-finder could indeed deem Novartis' conduct highly offensive.

### D. PLAINTIFF'S NEGLIGENCE CLAIM IS WELL-PLED

"In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Minn. Life Ins. Co. v. Cooke*, 2021 U.S. Dist. LEXIS 213801, at *6 (D.N.J. Nov. 4, 2021). Plaintiff sufficiently establishes each element.

***First***, "[t]he determination of the existence of a duty of care to avoid harm to another is ultimately governed by fairness and public policy." *Robsinson v. Vivirito*, 217 N.J. 199, 208 (2014). Accordingly, "[i]t is well-established that entities that collect sensitive, private data from consumers and store that data on their networks have a duty to protect that information." *Am. Med.*, 2021 U.S. Dist. LEXIS 240360, at *58 (internal quotations and citation omitted); *see also Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, 2014 U.S. Dist. LEXIS 82098, at *6 (E.D. Pa. June 16, 2014) (concluding existence of duty to provide adequate data privacy after fulsome analysis); *In re BetMGM Data Breach Litig.*, 2024 U.S. Dist. LEXIS 245132, at *10 (D.N.J. Nov. 20, 2024) (finding defendant owed plaintiff "a common law duty to safeguard its PII").

***Second***, Novartis' breach of this duty resulted in a privacy injury to Plaintiff due to the unauthorized dissemination of her Sensitive Health Information. Such an injury is cognizable under New Jersey law. *See Am. Med.*, 2021 U.S. Dist. LEXIS 240360, at *40 (finding that as a result of medical information breach, plaintiffs "have suffered the actionable intangible harm of the wrongful use and dissemination of their private information, like the interests protected by common law privacy torts"); *see also* § III(B), *supra*. As Plaintiff pleads a cognizable duty, breach of that duty, causation, and injury, Novartis' Motion must be denied as to her negligence claim.

### E. PLAINTIFF SUFFICIENTLY ALLEGES CLAIMS FOR BREACH OF CONFIDENCE AND BREACH OF FIDUCIARY DUTY

"[A] breach of confidence involves 'the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.'" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (quoting Alan B. Vickery, *Note, Breach of Confidence: An Emerging Tort*, 92

COLUM. L. REV. 1426, 1455 (1982)). "[C]entral to a breach-of-confidence claim is that a 'third party gain[ed] unauthorized access to a plaintiff's personal information[.]'" *Vorhees v. Tolia*, 2020 U.S. Dist. LEXIS 46150, at *28 (D.N.J. Mar. 17, 2020) (citing *Kamal*, 918 F.3d at 114). The Complaint alleges a confidential relationship between Novartis and Plaintiff by way of Novartis being a medical services provider dealing with Plaintiff's Sensitive Health Information. *See* Compl. ¶¶ 96, 110. Novartis breached its duty of confidentiality by collecting and transmitting Plaintiff's private Sensitive Health Information to unauthorized third parties, including Google and Contentsquare. *Id*. ¶¶ 6, 11, 19-20. As a result, Plaintiff suffered a loss of privacy, loss of confidentiality, loss of the benefit of the bargain, loss of value in her Sensitive Health Information, and increased infiltrations into their privacy through unwanted targeted advertising. *See id.* ¶¶ 14, 22, 84-89, 155.

Novartis argues that there was no "confidential relationship" because Novartis is a website operator, not a healthcare provider. *See* Mot. at 22-23. Not so. As explained below, Novartis is indeed a healthcare provider. *See* III(H)(ii), *infra*. Moreover, even if it were not, its argument would still fail. Novartis refers to Website users ubiquitously as its "patients," provides them with access to medical resources, and collects and stores their medical information. *See* Compl. ¶ 96; *see also id*. As many Courts have found under analogous circumstances, Novartis cannot act as a healthcare provider when convenient to sell its products but disclaim the responsibilities of a healthcare provider to escape liability. For example, in *Pattison v. Teladoc Health, Inc.*, 2025 U.S. Dist. LEXIS 121044, at *11-13 (S.D.N.Y. June 25, 2025), the court rejected the idea that an operator of a healthcare website, which "function[s] as effectively as a healthcare provider, [and] reap[s] the benefits of providing such services to its consumers," should be allowed "to circumvent the obligations of confidentiality that any healthcare provider in the United States is

subject to." *Id*. at 13.[7] Like Plaintiff here, the *Pattison* plaintiffs alleged that Teladoc breached the duty of confidentiality by sharing their private health information with third parties like Facebook through the use of tracking pixels. *Id.* at *12. Teladoc, like Novartis, is a multinational healthcare corporation that provides services including telehealth, medical opinions, and on-demand remote medical care. *Id.* at *13. The court found that dismissing the claim "would be contrary to the purposes undergirding the breach of confidence tort." *Id.*; *see also Wallace v. Health Quest Sys., Inc.*, 2021 U.S. Dist. LEXIS 54557, at *32 (S.D.N.Y. Mar. 23, 2021) (noting that the duty of confidence "has been extended beyond the physician-patient context to healthcare corporations because the cloak of confidentiality wraps around more than the health care professionals who render … services" (internal quotation marks and citation omitted)); *Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872, at *8 (N.D. Cal. Mar. 19, 2024) (denying motion to dismiss breach of confidence claim where plaintiff alleged that defendant had obligations under federal and state law to keep her health information confidential but nonetheless disclosed that information to third parties by way of the Facebook pixel on its website).

Novartis is one of the largest pharmaceutical companies in the country. Compl. ¶¶ 3-4. To further its business, Novartis provides consumers with the Pharmaceutical Websites, through which they provide medical advice on how to properly administer prescription drugs, grant access to "Novartis Patient Support," and make patient support team members available to them. *Id.* ¶ 96. This Court

---

[7] New York courts require plaintiffs to plead substantially similar elements for a breach of confidence claim: that "'(i) the defendant assumed a duty of confidentiality, (ii) the defendant intentionally, knowingly, or negligently breached that duty, and (iii) the plaintiff was damaged as a result of that breach.'" *Pattison*, 2025 U.S. Dist. LEXIS 121044 at *11 (quoting *In re Canon U.S.A. Data Breach Litig.*, 2022 U.S. Dist. LEXIS 248197, at *29 (E.D.N.Y. Mar. 15, 2022)).

should follow *Pattison*, *Wallace*, *and Toy* and allow Plaintiff's breach of confidence claim to proceed.

Plaintiff's breach of fiduciary duty should proceed for similar reasons. To state a claim for breach of fiduciary duty, a plaintiff must allege: "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read v. Profeta*, 397 F. Supp. 3d 597, 633 (D.N.J. 2019) (internal quotations and citation omitted). "A fiduciary relationship arises … when one … is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *McKelvey v. Pierce*, 173 N.J. 26, 800 A.2d 840, 859 (N.J. 2002) (internal citation omitted). Plaintiff alleges that by offering medical advice on the Website to Plaintiff, Novartis assumed a fiduciary duty to Plaintiff and "became guardians" of the Sensitive Health Information they inputted into the Website. *See* Compl. ¶¶ 96, 158-59. Novartis breached its duty to keep that Sensitive Health Information private in order to profit, and Plaintiff was harmed as a result. *Id.* ¶¶ 11, 83, 161. These allegations suffice to state a claim for breach of fiduciary duty. *See Adair*, 2026 U.S. Dist. LEXIS 23288, at *49-50 (denying motion to dismiss breach of fiduciary duty claim where plaintiffs alleged that "by entering medical information on [d]efendants' website, they relinquished control over how the information would be handled which … gave rise to a fiduciary relationship"); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (S.D.N.Y. Sept. 16, 2024) (same where plaintiffs alleged defendant's use of tracking pixels transmitted "confidential information related to [p]laintiffs' treatment" to third parties, including Facebook).

Novartis' reliance on *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369 (D.N.J. 2024), is unavailing. There, the Court held there was no relationship between plaintiffs and the third-party vendor-defendant who suffered a data breach because the vendor-defendant did not obtain plaintiffs' information from plaintiffs

directly, but from plaintiffs' healthcare providers. *Id.* at 376-77. Here, Plaintiff ***directly provided and entrusted*** Novartis with her Sensitive Health Information through the Website. Furthermore, data breach cases lack the intent alleged here: that that Novartis ***intentionally*** installed and configured the Tracking Tools on the Website to effectuate the unauthorized disclosures at issue here. For these reasons, the Court should deny Novartis' motion to dismiss Plaintiff's breach of fiduciary duty claim.

### F. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM IS WELL-PLED.

"Courts in this district (and others) allow breach of implied contract claims to proceed at a motion to dismiss stage if plaintiffs can plead that a defendant, 'through privacy policies, codes of conduct, company security practices, and other conduct, implicitly promised to safeguard the plaintiffs' personal information.'" *In re BetMGM Data Breach Litig.*, 2024 U.S. Dist. LEXIS 245132, at *13 (D.N.J. Nov. 20, 2024) (quoting *Am. Med.*, 2021 U.S. Dist. LEXIS 240360, at *70). Moreover, courts in the Third Circuit and across the country have found that "an implied contract is formed where a person discloses sensitive information in order to receive a benefit, with the expectation that such information will be protected." *Rudolph v. Hudson's Bay Co.*, 2019 U.S. Dist. LEXIS 77665, at *34 (S.D.N.Y. May 7, 2019); *Cohen v. Northeast Radiology, P.C.*, 2021 U.S. Dist. LEXIS 16497, at *22-23 (S.D.N.Y. Jan. 28, 2021) (same where defendant obtained and maintained plaintiff's PHI as part of providing radiological services to patients). As one court notes, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of. . .sensitive personal information would not imply the

recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sept. 14, 2016).

Novartis, through its Privacy Banner and other Website policies, implicitly promised Plaintiff and other Website users that it would safeguard and not disclose their Sensitive Health Information without consent. *See e.g, Bray v. Gamestop Corp.*, 2018 U.S. Dist. LEXIS 226220, at *16 (D. Del. Mar. 16, 2018) (finding that GameStop's privacy policy stating that "'GameStop knows that you care about your privacy and the use of your personal information' [] suggests an acknowledgment that data security was known by both sides to be an important factor. . ."); *In re Am. Fin. Res., Inc.*, 2023 U.S. Dist. LEXIS 108411, at *21 (D.N.J. Mar. 29, 2023) ("Although the [privacy] policy's provisions applicable to. . .[the] forms of PII at issue are less specific, it nonetheless states that [the defendant] is 'protecting the privacy and security of the information you share with us' [and] these allegations are sufficient to identify a policy or practice from which the Court could infer an implied contract[.]") (quotations and citations omitted). Novartis breached its promise by surreptitiously disclosing Plaintiff's Information to unauthorized third parties, in violation of its own policies and representations. *See* § III(A)(i), *supra*. Because "it [is] prudent to proceed with caution at this early stage," this Court should find that Plaintiff has "sufficiently pled the existence of an implied contract." *Bray*, 2018 U.S. Dist. LEXIS 226220, at *16; *Rutter's*, 511 F. Supp. at 535 (allowing breach of implied contract claim to proceed "where Plaintiffs plausibly allege that [the defendant] made certain express or implied assurances that their data would be safe in [the defendant's] hands.").

Further, Plaintiff alleges that she would not have entrusted Novartis with her Sensitive Health Information in the absence of such an implied contract between them. Compl. ¶ 175. Courts find damages to have been sufficiently pled for an implied contract claim where, as here, a plaintiff has "plausibly alleged that data

security was part of what [she] paid for but did not receive." *Bray*, 2018 U.S. Dist. LEXIS 226220, at *13; *Salas v. Acuity-CHS, LLC*, 2023 U.S. Dist. LEXIS 54825, at *27 (D. Del. Mar. 30, 2023) (allowing breach of implied contract claim where the plaintiff alleged that "she 'received healthcare and other services that were of a diminished value to that described in the contracts' as the result of [the defendant's] failure to fulfill its data security promises, and she would not have provided her private information to [the defendant] had [it] disclosed its security deficiencies.").

Finally, Novartis' contention that its Privacy Policy and Terms of Use bar Plaintiff's implied contract claim fails for the reasons stated in § III(A), *supra*, because "where a contract's existence or its specific terms are disputed, a court may allow breach of contract claims to proceed through discovery or trial alongside alternative causes of action." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 390 (D.N.J. 2015).

**G. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS WELL-PLED.**

In data privacy cases, courts in this District have held that "a Defendant is enriched where it 'commoditize[s] or receive[s] an independent pecuniary benefit from holding [] Personal Information.'" *Am. Fin. Res.,* 2023 U.S. Dist. LEXIS 108411, at *19 (quoting *Am. Med.*, 2021 U.S. Dist. LEXIS 240360 at *18). Allegations that such information "was valuable to the defendant because [it] allowed [the defendant] to better target customers and increase profits indicates enrichment specific to the PII." *Id.* at *19-20 (quotations omitted).

Here, Novartis was enriched because it received advanced advertising and marketing analytics services in exchange for Plaintiff's and Class Members' Sensitive Health Information. Compl. ¶¶ 82-83. Novartis' enrichment was unjust because it never obtained authorization from Plaintiff or Class Members to share their Sensitive Health Information with third parties. *Id.* ¶¶ 11, 75. Indeed,

Website users like Plaintiff were not even aware of the Tracking Tools, and, had they been aware, they would not have agreed to provide their Sensitive Health Information to Novartis. *Id.* ¶¶ 78-81, 187. Thus, Novartis should disgorge the value of the improperly obtained advertising and marketing analytics services it received at the expense of Plaintiff's and Class Members' privacy. *Nite Glow Indus. v. Cent. Garden & Pet Co*., 2025 U.S. Dist. LEXIS 192955, at *11-12 (D.N.J. Sep. 30, 2025) ("[A] defendant's gain can be quantified, for example, by reference to its profits or to the savings it achieved by having access to the misappropriated information.")

Novartis' arguments to the contrary are unavailing. Under applicable law, Plaintiff must merely allege that she would have expected remuneration for her private information had she known the "true facts." *See Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012) (unjust enrichment claim proper where plaintiffs allege they would have expected renumeration had they known the "true facts"); *Impact Protective Equip. v. Xtech Protective Equip.*, 2021 N.J. Super. Unpub. LEXIS 624, at *35 (Super. Ct. App. Div. Apr. 14, 2021) (same). Moreover, unjust enrichment requires Novartis to have "received a ***benefit***," not for Plaintiff to have suffered a ***loss*** or ***detriment*** as Novartis assert. *Gaddy v. Long & Foster Cos.*, 2022 U.S. Dist. LEXIS 46657, at *33 (D.N.J. Mar. 15, 2022); *Williams v. TMC Health*, 2024 U.S. Dist. LEXIS 178452, at *25-26 (D. Ariz. Sep. 30, 2024) ("Plaintiff need not have suffered a loss corresponding to the defendant's gain for there to be a valid claim for an unjust enrichment.") (quotations omitted).

Thus, Novartis' Motion to dismiss Plaintiff's unjust enrichment claim should be denied.

### H. PLAINTIFF'S ECPA CLAIM IS PROPER.

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication,

liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiff's well-pled allegations satisfy this exception. Plaintiff alleges that her communications to Novartis through the Website were intercepted by Novartis, using the Tracking Tools, for the purpose of disclosing the contents of those communications to the Tracking Tool Providers. *See* Compl. ¶¶ 6, 11, 57-74, 76. Moreover, Plaintiff alleges that this disclosure was tortious and criminal, constituting a violation of HIPAA, an invasion of privacy, a breach of confidence, and a breach of Novartis' fiduciary duty. *Id*. at ¶ 207.

Novartis' arguments that the crime-tort exception does not apply are, generally, that 1) that a profit motive immunizes its tortious conduct, 2) it is not a HIPAA-covered entity, and 3) that its disclosure was not separate from the interception. Mot. at 36-38. For the reasons that follow, each of these arguments must fail.

**i. Novartis' Profit Motive Does Not Cure Its Tortious and Criminal Conduct.**

Novartis' argues that its "'primary' or 'determinative'" motivation was "financial or business considerations." Mot. at 37-38.[8] But, "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). Finding otherwise would fully defeat the purpose of the crime-tort exception by excluding "'otherwise criminal or tortious act[s] solely because [they are] also motivated by

---

[8] Novartis' quotation of the words "primary" and "determinative," Mot. at 37 (purportedly quoting *New Concepts for Living, Inc. v. Commc'ns Workers Loc. 1040*, 2021 U.S. Dist. LEXIS 102132 (D.N.J. May 28, 2021)) is unclear. *New Concepts* does not contain either word.

financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) (quoting *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *6 (N.D. Ill. Feb. 21, 2025)). But "[c]rimes and torts often have financial motivations, and the statutory text broadly covers '*any* criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *B.N. v. Or. Reprod. Med., LLC*, 2025 U.S. Dist. LEXIS 222638, at *11 (D. Or. Nov. 12, 2025) (quoting 18 U.S.C. § 2511(2)(d)) (emphasis added by *Or. Reprod.*).[9] Novartis' contrary position would necessarily imply, for example, that "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money." *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *10. With blackmail, "[o]f course, [making money] is often the end goal," so under Novartis' reading, "blackmail would rarely, if ever, violate the ECPA…. This cannot be the case." *Id.* at *20. The Court should likewise reject Novartis' argument here.[10]

[9] *See also Walgreen*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Riganian*, 2025 U.S. Dist. LEXIS 138122, at *29 ("Accordingly, the Court declines to adopt any 'bright-line rule insulating financial motives from the crime-tort exception'") (quoting *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *6 (W.D. Wash. Nov. 14, 2024)); *Doe v. Tenet Healthcare*, 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025) ("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

[10] Additionally, whether Novartis had criminal or tortious intent when intercepting Plaintiff's communications is a factual issue that cannot be resolved at this stage. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("determination of [defendant]'s actual purpose for…using the Pixel Code requires a factual undertaking").

Novartis' other cases do not help it. In *New Concepts*, a third party "procured his entrance to [a telephone] conversation by fraudulent or deceptive means," and therefore the alleged fraud "was to procure the recordings themselves." 2021 U.S. Dist. LEXIS 102132 at * 12. But the plaintiffs in *New Concepts* did not allege a tortious use of the intercepted information. "Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Id*. at *11 (quoting *Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010)). That is not the case here, where the use of the information—Novartis' unauthorized disclosure of private information—is indeed both criminal and tortious. Indeed, Novartis' citation to *In re Google Inc.* makes Plaintiff's point – the focus is not on whether the interception was motivated by a desire to commit a criminal act, the "focus … is [on] whether the purpose for the interception—its intended use—was criminal or tortious." 806 F.3d 1at 145 n.81.

**ii. Novartis' HIPAA violations trigger the crime-tort exception.**

Courts from "coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA" based on interceptions and disclosures similar to those alleged by Plaintiff. *Stein*, 2025 U.S. Dist. LEXIS 31273, at *11-12.[11] Plaintiff alleges that Novartis installed and configured the Tracking Tools to intercept their HIPAA-protected health information for the purpose of

[11] *See, e.g., Murphy*, 2024 U.S. Dist. LEXIS 177625, at *11-12 (denying motion to dismiss ECPA claim where plaintiffs alleged the interception of their health information for the intended use of disclosing the information to third parties in violation of HIPAA); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (same); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *R.S. v. Prime Healthcare Servs*., 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same).

disclosing it to unauthorized third parties. These allegations satisfy the crime-tort exception, and Novartis arguments to the contrary are wholly meritless.

***First***, Novartis argues that it is "not subject to HIPAA's requirements" because it is "a pharmaceutical manufacturer – not a health care provider." Mot. at 38. But, HIPAA does not include any provision that would categorically bar a pharmaceutical provider from being considered a health care provider. Under 45 CFR § 160.103, "covered entity" is broadly defined to include any "health plan," "health care clearinghouse," or "health care provider who transmits health information electronically in connection with" HIPAA-covered transactions. A "health care provider" includes any entity who "furnishes, bills, or is paid for health care in the normal course of business." 45 CFR § 160.103. "Health care," in turn, means the "care, services, or supplies related to the health of an individual," including, but not limited to . . . [the] "sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription." *Id.* Novartis undoubtedly provides health care under this definition. Novartis operates patient-facing programs that transmit PHI in standard transactions related to the furnishing of prescription medications as part of its pharmaceutical operations that generate billions of dollars in sales annually. *See* Compl. ¶¶ 3-5, 96. Through the Pharmaceutical Websites, Novartis (i) repeatedly and ubiquitously refers to Website users as its "patients"; (ii) provides detailed information on how to properly administer and calculate the dosages its prescription drugs; (iii) grants access to "Novartis Patient Support," which provides financial assistance, insurance support, and treatment resources to its patients; (iv) makes the "Novartis Patient Support Team" available to its patients to serve as resources with regards to their prescriptions; (v) collects and stores patient medical and health insurance information and; (vi) requires patients to affirm that the information provided to it is accurate and identical to information provided to their treating physicians and health insurance providers. *Id.* ¶ 96. Each of these services constitutes

the furnishing of health care. Indeed, the Department of Health and Human Services has ***explicitly advised*** that "a pharmaceutical manufacturer that provides support and guidance to doctors and patients regarding the proper use of their products is providing 'health care'" under the meaning of HIPAA and is thus a covered entity.[12]

***Second***, Novartis incorrectly claims that Plaintiff fails to allege that it conducts any covered transactions. *See* CFR § 160.103 (defining covered transactions). Not so. Plaintiff repeatedly alleges that Novartis is a covered entity under HIPAA. *See* Compl. ¶¶ 95-98. By doing so, Plaintiff necessarily alleges that Novartis satisfies every requirement set forth by HIPAA for an entity to be considered a covered entity, including that Novartis conducts covered transactions. This conclusion is doubly true here, where the Court "must draw all reasonable inferences in favor of the plaintiff." *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014). Tellingly, Novartis does not dispute the fact that it conducts covered transactions but merely argues that Plaintiff's allegations are inadequate. *See* Mot. at 38. Novartis had every opportunity to provide facts to the contrary through one of the four corporate declarations offered in support of its Motion. It did not because it could not.[13]

***Third***, even if Novartis was indeed not regulated by HIPAA, Plaintiff's allegations would still satisfy the crime-tort exception. The New Jersey Data Privacy Law exempts HIPAA-covered entities from its requirements but requires other

---

[12] *Response to Comments Received – General Provisions: Definitions - Covered Entity*, 65 FR 82569 (2000).

[13] Moreover, even if Novartis is found not to be a covered entity but is instead a "business associate" under HIPAA, business associates can also be directly liable for HIPAA violations, including for failure to comply with the requirements of the Security Rule and for impermissible uses and disclosures of PHI. *See HITECH Act*, 42 U.S.C. § 17931 (making 45 CFR §§ 164.308, 164.310, 1364.314, and 164.316 directly applicable to business associates; 45 CFR § 164.502(a)(3).

website operators to "not process personal data for purposes that are neither reasonably necessary to, nor compatible with, the purposes for which such personal data is processed, as disclosed to the consumer, unless the controller obtains the consumer's consent" and "not process sensitive data concerning a consumer without first obtaining the consumer's consent." N.J. Stat. § 56:8-166.12. Thus, if Novartis was not regulated under HIPAA, it would instead be regulated under the New Jersey Data Privacy Law. In such case, its violations of the New Jersey Data Privacy Law would satisfy the crime-tort exception under the same reasoning set forth in this Section as to HIPAA. Likewise, Novartis' tortious invasion of Plaintiff's privacy also suffices to satisfy the crime-tort exception.

**iii. Novartis' interceptions and disclosures are separate acts.**

Novartis' argument that Plaintiff does not allege "any tortious or criminal act separate from the alleged interception" both misstates the law and misunderstands Plaintiff's allegations. Plaintiff does not allege that Novartis violated HIPAA and invaded her privacy by ***intercepting*** her communications. Rather, Plaintiff alleges that Novartis violated HIPAA and invaded her privacy by ***disclosing*** the contents of their intercepted communications to unauthorized third parties. Indeed, if Novartis had only collected Plaintiff's communications through tracking technology but did not disclose them to Google and Contentsquare, Plaintiff would not have brought this case.

"[A]lleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception." *Costco*, 2024 U.S. Dist. LEXIS 207197, at *18. "The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose." *Id*. Plaintiff's allegations thus satisfy the crime-tort exception by showing that Novartis intercepted her Sensitive Health Information with the purpose of disclosing it to unauthorized

third parties in violation of HIPAA and the other causes of action asserted in the Complaint because "[Novartis'] *intentional* disclosure of the collected Private Information...constitutes a 'further impropriety' independent and separate from [Novartis'] *interception*." *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *16 (quoting *Weston v. Lefiti*, 2024 U.S. App. LEXIS 27181, at *5 (9th Cir. Oct. 25, 2024)). Courts routinely find such allegations sufficient under analogous circumstances. *See, e.g.*, *B.K. v. Eisenhower Medical Center*, 2024 U.S. Dist. LEXIS 67497, at *10 (C.D. Cal. Apr. 11, 2024) (acknowledging that a violation of HIPAA can constitute independent conduct such that the crime-tort exception would apply); *I.T. v. ChoicePoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *22 (W.D. Wash. Aug. 29, 2025) (same); *Walgreen*, 733 F. Supp. 3d at 901 (same for invasion of privacy).

*In re Google* is inapposite. In *In re Google*, the defendant was Google itself, and there was no further disclosure of the data it collected through its internet tracking technologies. 806 F.3d at 140-41. Thus, unlike here, the "plaintiffs plead no tortious or criminal *use* of the acquired internet histories" but rather, alleged only that the interception itself violated various privacy protections. *Id*. at 145. The same is not true here, where Plaintiff alleges that Novartis unlawfully disclosed the intercepted communications to Google and Contentsquare, as explained above. Novartis' other authority is even less availing. In *Allen v. Quicken Loans, Inc.*, the Court found that the defendant's Tracking Tool use was not unlawful. 2018 U.S. Dist. LEXIS 192066, at *15 (D.N.J. Nov. 9, 2018). It is of little surprise that the crime-tort exception would not apply absent commission of a crime or tort. Further, *In re Nickelodeon Consumer Privacy Litig.* actually supports Plaintiff's argument: in *Nickelodeon*, the court explicitly held that "illegal interception of a communication [which] occurs with the express purpose to later disclose the intercepted information" may fall under the crime-tort exception. 2014 U.S. Dist.

LEXIS 91286, at *51. That is precisely what Plaintiff alleges. Thus, for the foregoing reasons, the Court should deny Novartis' Motion to dismiss Plaintiff's ECPA claim.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that this Honorable Court **DENY** Defendant's Motion to Dismiss.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Sonjay Singh*
Sonjay Singh (*pro hac vice*)
**SIRI | GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Jack R. Spitz, SBN 248632019
**SIRI | GLIMSTAD LLP**
8 Campus Drive, Suite 105 PMB#161
Parsippany, New Jersey 07054
Main: 212-532-1091
jspitz@sirillp.com

Alyssa Tolentino (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: atolentino@sirillp.com

*Attorneys for Plaintiff and the Class*