**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| P.M., on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>Defendant. | Case No. 2:26-cv-2917<br><br>Hon. Michael Farbiarz, U.S.D.J.<br><br>Hon. Jessica S. Allen, U.S.M.J. |

**REPLY BRIEF IN FURTHER SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

ARGUMENT ....... 1

I. Plaintiff Consented to Transmission of Information She Provided on the Website. ....... 1

II. The CAC Should Be Dismissed for Failure to Identify the Plaintiff. ....... 6

III. Plaintiff Lacks Article III Standing. ....... 6

A. Plaintiff Lacks Standing to Assert Claims Regarding the Seven Non-Kisqali Websites. ....... 6

B. Plaintiff Alleges No Injury-In-Fact. ....... 7

C. Plaintiff Fails to Allege Traceability. ....... 9

IV. Plaintiff Fails to State a Claim Under Rule 12(b)(6). ....... 9

A. Invasion of Privacy (Count I). ....... 10

B. Breach of Confidentiality and Fiduciary Duty (Counts II and III). ....... 11

C. Negligence (Count IV). ....... 12

D. Implied Contract (Count V). ....... 12

E. Unjust Enrichment (Count VI). ....... 13

F. Wiretap Act (Count VII). ....... 13

CONCLUSION ....... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. CIGNA Corp. Services, LLC*,
818 F. Supp. 3d 641 (E.D. Pa. 2026)....................11

*In re BetMGM Data Breach Litigation*,
2024 WL 5710661 (D.N.J. Nov. 20, 2024)....................12

*Brahm v. Hosp. Sisters Health Systems*,
2024 WL 3226135 (W.D. Wis. June 28, 2024)....................11

*Caine v. Sturdy Memorial Hospital, Inc.*,
2026 WL 673483 (D. Mass. Mar. 10, 2026)....................15

*Cook v. GameStop*,
148 F.4th 153 (3d Cir. 2025)....................7, 8, 9

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)....................15

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....................11

*Gaddy v. Long & Foster Cos.*,
2022 WL 22894854 (D.N.J. Mar. 16, 2022)....................13

*In re Gauthier*,
222 A.3d 707 (N.J. Super. App. Div. 2019)....................14

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)....................11

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015)....................8

*Haas v. Pittsburg National Bank*,
526 F.2d 1083 (3d Cir. 1975)....................6

*Lewis v. Casey*,
518 U.S. 343 (1996)....................7

*Lieberson v. Johnson & Johnson Consumer Cos.*,
865 F. Supp. 2d 529 (D.N.J. 2011)....................................................................7

*Maersk Line v. TJM International Limited Liability Co.*,
427 F. Supp. 3d 528 (D.N.J. 2019)....................................................................13

*Moore v. Kulicke & Soffa Industries, Inc.*,
318 F.3d 561 (3d Cir. 2003) ..............................................................................3

*Nichols v. PeaceHealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026).....................................................15

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016) ..............................................................................14

*Pattison v. Teladoc Health, Inc.*,
2025 WL 1756364 (S.D.N.Y. June 25, 2025).......................................................11

*Popa v. Harriet Carter Gifts, Inc.*,
772 F. Supp. 3d 592 (W.D. Pa. 2025)..................................................................3

*Roberts v. Charlotte Mecklenburg Hospital Authority*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025) .......................................................15

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)..........................................................4

*Simner v. LG Electronics USA Inc.*,
2022 WL 3152707 (D.N.J. Aug. 8, 2022) ..............................................................7

*Slater v. Susquehanna County*,
613 F. Supp. 2d 653 (M.D. Pa. 2009)...................................................................5

*Smidga v. Spirit Airlines, Inc.*,
2026 WL 1470137 (3d Cir. May 26, 2026)........................................................7, 8

*Smith v. Datla*,
451 N.J. Super. 82 (App. Div. 2017)....................................................................11

*Smith v. Pro Custom Solar LLC*,
2021 WL 141336 (D.N.J. Jan. 15, 2021)...............................................................3

*Spellman v. Express Dynamics, LLC*,
150 F. Supp. 3d 378 (D.N.J. 2015).....12

*In re Subaru Battery Drain Products Liability Litigation*,
2021 WL 1207791 (D.N.J. Mar. 31, 2021) .....7

*Theys v. Dental Intelligence, Inc.*,
2026 WL 636743 (N.D. Ill. Mar. 6, 2026) .....11

*Toy v. Life Line Screening of America, Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .....11

*W.N.J. v. Yocom*,
257 F.3d 1171 (10th Cir. 2011) .....6

*Wallace v. Health Quest Systems, Inc.*,
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021).....11

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sep. 30, 2024) .....15

**Statutes**

N.J. Stat. §§ 56:8-13.....14

**Other Authorities**

Fed. R. Civ. P. 10(a).....6

Fed. R. Civ. P. 12(b)(6).....9

Novartis, Privacy Policy (https://www.novartis.com/us-en/privacy).....4

It is clear that Plaintiff consented to use of the Website Technologies at issue, which ends this case. NPC's privacy banners informed Plaintiff that data related to her interactions with the Kisqali and Savings Card Websites in 2024 would be transmitted to third parties and gave her clear directions on how to "Decline" advertising. The hyperlinked Privacy Policy further explained the use of the Website Technologies and told Plaintiff how to also opt out of Google Analytics. Plaintiff never alleges she did either. Instead, Plaintiff offers a declaration—not from herself but from her attorney—which purports to analyze data flows long ***after*** she allegedly visited the Websites and the privacy banners had changed. This improper attempt to supplement the CAC with attorney arguments should be rejected. Plaintiff likewise lacks standing and she fails to state any viable cause of action on that basis.

Plaintiff's liability theory rests on treating a pharmaceutical manufacturer's website as a HIPAA-regulated healthcare provider. No court has done so because that premise is simply wrong. NPC does not provide individuals medical treatment, does not dispense drugs through the Kisqali or Savings Card Websites, and does not engage in electronic HIPAA standardized transactions required to qualify as a covered entity. Plaintiff's claims and this lawsuit should be dismissed.

## ARGUMENT

### I. Plaintiff Consented to Transmission of Information She Provided on the Website.

Plaintiff does not contest that the privacy banners, Privacy Policy, Terms of

Use, and sign-up process on the Kisqali and Savings Card Websites are integral to the CAC and thus properly before this Court. Mot. 8. Nor does Plaintiff contest judicial notice of these disclosures and agreements is proper, *id.* 9–10, or even that Plaintiff's consent would be sufficient to bar her claims, *id.* 10–11. Plaintiff cannot evade her consent to the alleged data transmissions, and her last-ditch theory that NPC violated its Privacy Policy is a non-starter.

*First*, the Privacy Policy—presented to Plaintiff via hyperlink on two separate privacy banners, in the Savings Card enrollment process, and in the footers of each page of the Websites, Mot. 6–7—discloses that "personal information"[1] would be transmitted via "pixel tags," "Google Analytics," and "similar technologies," Mot. 6–7 (quoting Goldberg Decl. ¶¶ 5–7), and used to "deliver Targeted Advertising," Goldberg Decl. Ex. A, at 5. The Privacy Policy then gives instructions for opting out of Google Analytics and advertising, *id.* at 3, 8–9, which Plaintiff never alleges she followed. Plaintiff's arguments about alleged operation of and alleged "interact[ions]" with the banners, Opp. 4, are beside the point because she never alleges she had such interactions. NPC prominently displayed the Privacy Policy through the banners, Savings Card enrollment process, and footers, and thus Plaintiff was on notice, and her use of the Kisqali and Savings Card Websites means she

[1] Personal information "means information that can reasonably be linked to an identifiable individual," Goldberg Decl. Ex. A, at 1.

assented to those disclosures. Mot. 11–13 (collecting cases). In addition, the Terms of Use, which Plaintiff never contests she agreed to, Mot. 7, 13, expressly state that any information provided "will be treated as [] nonconfidential" and "may be used for any purpose[.]" Malk. Decl. Ex. A, at 2; Mot. 7.[2]

Plaintiff responds that while the Savings Card application's final page contains terms that she agreed to, she entered information on previous pages. On that basis, she argues, information was shared with "Google and Contentsquare" without her consent. Opp. 5. But Plaintiff consented to the use of her "personal information" for advertising and analytics purposes by assenting to the Privacy Policy and not following its simple and clear opt out instructions—full stop. Plaintiff's consent does not depend on just one consent pathway, and the disclosures at the end of the application process do not limit consent to future data collection and use. Mot. 7.

Plaintiff claims she was denied the option "not to consent." Opp. 4. But she consented to the Privacy Policy by ***using*** the websites, *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 605 (W.D. Pa. 2025) (collecting sources), *rev'd for lack of standing*, No. 25-1760, 2026 WL 837280 (3d Cir. Mar. 26, 2026). She could have

[2] *Smith v. Pro Custom Solar LLC*, 2021 WL 141336 (D.N.J. Jan. 15, 2021) and *Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561 (3d Cir. 2003), Opp. 4, are inapposite. *Smith* analyzed statute-specific provisions of the Telephone Consumer Protection Act, 2021 WL 141336, at *2–5, and *Moore* concerns whether "independent development" is an affirmative defense under Pennsylvania's trade secrets law, 318 F.3d at 567–68.

withheld consent by ***not*** using the Kisqali and Savings Card Websites. Indeed, "it is widely understood" that "your behavior may be tracked" and "studied" on websites. *Santoro v. Tower Health*, 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024).

*Second*, Plaintiff argues that the Privacy Policy itself forbids the disclosure of "Sensitive Personal Information" for targeted advertising and that NPC violated its Privacy Policy. Opp. 6. Not only is Plaintiff's policy-violation theory not in the CAC—which does not cite the Privacy Policy—but Plaintiff's argument hinges on the "Supplemental State Privacy Notice" section in the Privacy Policy (Section IV), which does ***not*** even say it covers Vermont, the state where Plaintiff allegedly resides.[3] Goldberg Decl. Ex. A, at 10; CAC ¶ 16. Even if the Supplemental State Privacy Notice applied, Plaintiff simply alleges that information was transmitted to Google Analytics and ContentSquare, CAC ¶¶ 59–61, Opp. 5, which are "service provider[s]" expressly permitted to receive "Sensitive Personal Information." Goldberg Decl. Ex. A, at 13. Sections I and II of the Privacy Policy disclose NPC's use of service providers for these and a host of different functions.

In an attempt to manufacture support, P.M.'s ***counsel***, not P.M. herself, offers

[3] The Privacy Policy identifies California and Virginia as covered states. Goldberg Decl. Ex. A, at 10. The full list includes: California, Colorado, Connecticut, Delaware, Indiana, Iowa, Kentucky, Maryland, Minnesota, Montana, Nebraska, New Jersey, New Hampshire, Oregon, Rhode Island, Tennessee, Texas, Utah, and Virginia. *See* https://www.novartis.com/us-en/privacy [https://perma.cc/K93R-2FBU] (last visited July 8, 2026).

a declaration accusing NPC of violating its Privacy Policy by directing visitors' browsers to send data to Google Analytics. Opp. 3. Counsel claims "substantially similar" data is sent whether or not the user selects "Accept" or "Decline" on the banner. Singh Decl. ¶ 5. For starters, counsel analyzes the ***wrong*** privacy banner. He allegedly performed this "technical analysis" in September 2025 and May 2026. Singh Decl. ¶ 3. But Plaintiff allegedly visited the Kisqali websites in November 2024. CAC ¶ 18. The prior privacy banners that governed Plaintiff's use of the websites are different. The "Decline" button on the 2024 privacy banners only provided an opt out for ***advertising*** and did not purport to allow visitors to manage the transmission of analytics data. Mot. 6 (quoting Johnson Decl. ¶¶ 7–8). Thus, counsel's accusations about the operation of NPC privacy banners in 2025/2026, Singh Decl. ¶ 4, have zero bearing on P.M.'s claims, which center on the 2024 privacy banners that P.M. does not allege she interacted with. On top of that, it is improper for an attorney to supplement a complaint with a declaration of his own experience. *See Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 665–66 (M.D. Pa. 2009), *aff'd*, 465 F. App'x 132 (3d Cir. 2012). The declaration should be rejected.

Consent aside, Plaintiff's theory that NPC violated its Privacy Policy by using "Sensitive Personal Information" for targeted ads fails for another, independent reason: she alleges insufficient facts to show that NPC transmitted her information for advertising. The CAC alleges that Plaintiff saw targeted ads related to cancer

after visiting the Kisqali websites and applying for a Savings Card—that's all. CAC ¶ 22. Plaintiff could have seen ads simply because she ran internet searches for cancer treatments or visited other health-related websites. She never says otherwise.

For all these reasons, Plaintiff cannot escape her consent to the data practices at issue, and her claims should be dismissed for this reason alone.

## II. The CAC Should Be Dismissed for Failure to Identify the Plaintiff.

Under Rule 10(a), the CAC also should be dismissed for failure to identify the Plaintiff. Mot. 2-3 n.1. Plaintiff never responds to this point. Dismissal is warranted because failure to seek permission to proceed anonymously is "fatal to the anonymous plaintiff's case." 5A Wright & Miller's Fed. Prac. & Proc. Civ. § 1321 (4th ed. Apr. 2026 update) (citing *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 637 (6th Cir. 2005); *W.N.J. v. Yocom*, 257 F.3d 1171, 1172–73 (10th Cir. 2011).

## III. Plaintiff Lacks Article III Standing.

### A. Plaintiff Lacks Standing to Assert Claims Regarding the Seven Non-Kisqali Websites.

Plaintiff does not dispute that she never visited the seven non-Kisqali websites named in the CAC, dooming her standing to pursue claims as to those websites. Mot. 14–15. Plaintiff points to *Haas v. Pittsburg National Bank*, 526 F.2d 1083 (3d Cir. 1975)—a 51-year-old case that some courts say permits plaintiffs to bring class claims for products they did not purchase (Opp. 12–14)—but this case is not a products case, and many courts in this District have rejected *Haas*, relying on more

recent Supreme Court precedent to rule that a plaintiff "cannot establish an injury-in-fact with regard to" products she did not purchase. *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011); *In re Subaru Battery Drain Prods. Liability Litig.*, 2021 WL 1207791, at *7 (D.N.J. Mar. 31, 2021) (same). This makes sense, because whether "a suit may be a class action . . . adds nothing to the question of standing[.]" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted). Further, *Haas*'s requirements are not met here. The alleged "issues" concerning each website are "not demonstrably the same," *Simner v. LG Electronics USA Inc.*, 2022 WL 3152707, at *4 (D.N.J. Aug. 8, 2022), as none of the other websites allegedly used Contentsquare, CAC ¶ 60, and the Privacy Policy and Terms of Use are not alleged to have been presented in identical ways.

### B. Plaintiff Alleges No Injury-In-Fact.

Plaintiff cannot escape her failure to establish injury-in-fact as to any website. Mot. 15–21. Plaintiff argues that NPC's alleged "unauthorized internet surveillance" constitutes a "clear de facto injury," Opp. 9–10, but that is not the law. As the Third Circuit instructs, there is no de facto privacy harm when a website "mak[es] no express promise to refrain from collecting site visitor's information." *Smidga v. Spirit Airlines, Inc.*, No. 24-1757, 2026 WL 1470137, at *3 (3d Cir. May 26, 2026).

*Cook v. GameStop*, 148 F.4th 153 (3d Cir. 2025), Opp. 10–11, is of no help to Plaintiff. *Cook* reiterates that disclosing private information ***must*** result in

"embarrassment or humiliation" to cause concrete harm. 148 F.3d at 159. The CAC fails to make such allegations. *See Smidga*, 2026 WL 1470137, at *2 ("[T]he tort of disclosure of private information requires an allegation of resulting embarrassment or humiliation, which the complaint lacks." (citing *Cook*, 148 F.3d at 159)).[4]

Plaintiff also relies on *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125 (3d Cir. 2015), arguing that "receipt of targeted advertisements" is sufficient to "establish standing." Opp. 10. But standing existed in *Google* only because defendant violated its own policy by "covert[ly]" placing third-party cookies on browsers when users had opted out of those cookies. *Id.* at 132. Plaintiff does not plausibly allege NPC violated its own policies because: Plaintiff (1) does not overcome NPC's Privacy Policy, which allows for transmission of "personal information" for various purposes; and (2) does not adequately allege that NPC transmitted ***her*** data for personalized ads. *See supra* 2–6.

Finally, NPC explained that Plaintiff's benefit of the bargain and similar theories rest on hypothetical or legally insufficient harms. Mot. 19–20. Plaintiff responds that whether interests are "legally protected" is "an issue of the merits." Opp. 11 (quoting *Google*, 806 F.3d at 135). But Plaintiff (again) misreads *Google*. It is blackletter law that to "establish injury in fact, a plaintiff must show that he or

---

[4] To plead injury based on intrusion upon seclusion, Plaintiff must allege that the intrusion is "highly offensive," *Cook*, 148 F.4th at 160, Mot. 16–17, which she does not do here. Plaintiff's brief offers no response. *See* Opp. 8–11.

she suffered 'an invasion of ***a legally protected interest***' that is 'concrete and particularized,'" *Cook*, 148 F.4th at 158 (emphasis added) (citation omitted).

### C. Plaintiff Fails to Allege Traceability.

Plaintiff next asserts that her alleged harms are traceable to NPC's conduct because "Novartis intentionally configured the Tracking Tools" to transmit user data beyond the "Tracking Tools' default state," and nothing more is required. Opp. 11–12. That is wrong for multiple reasons. There is no credible argument that Plaintiff withheld consent. Section I of NPC's Privacy Policy—hyperlinked on two separate privacy banners—permits data transmissions, *supra* 2-4, and so does Section IV, which permits transmissions to "service providers" like the Technology Vendors, *supra* 4. Moreover, Plaintiff's failure to allege that the ads she supposedly saw were placed by NPC or concerned NPC products goes to her failure to show that any data about her interactions with the Kisqali and Savings Card Websites was transmitted for advertising purposes in the first place—i.e., the alleged unauthorized disclosure, Mot. 15–16—not to the "collateral consequences" of the advertising. Opp. 12.

## IV. Plaintiff Fails to State a Claim Under Rule 12(b)(6).

Nothing in Plaintiffs' Opposition can mask her failure to plausibly allege other essential elements of her claims.[5]

---

[5] Plaintiff's failure to identify the governing law supports dismissal too, Mot. 22, and Plaintiff never responds to this fundamental deficiency.

### A. Invasion of Privacy (Count I).

Plaintiff has not shown an invasion of privacy under any theory. *See* Mot. 23–24. Plaintiff asserts that the alleged data transmissions were "highly offensive" and intrusive because NPC is a "healthcare provider with obligations under HIPAA." Opp. 18. But, as NPC explained, it is ***not*** a healthcare provider. Mot. 26–27, 38–39. NPC does not have a medical license, Mot. 38 n.11, and "Novartis Patient Support" offers what Plaintiff describes as "financial assistance, insurance support, and resources related to . . . treatment," CAC ¶ 96, Opp. 1, 30, not medical advice. Patient Support facilitates better access to a drug that a physician ***already advised*** is needed. Contrary to Plaintiff's assertions, Opp. 30 (quoting 45 C.F.R. § 160.103), the Kisqali and Savings Card Websites do not dispense or sell any drugs. They offer visitors access to a "discount" that "pharmacies" may then enter into their systems. Opp. 1.

Plaintiff also has no answer to her failure to show that ***NPC***—as opposed to the Technology Vendors—intruded into her seclusion. Mot. 24. NPC never collected any of the data at issue. As for public disclosure of private facts, Plaintiff never explains why this theory is not time-barred, which is fatal. *See* Mot. 24 n.8. Her argument that data was broadly publicized for "advertising" purposes is wrong as well. Opp. 16. Apart from Plaintiff's consent to any alleged advertising practices, and failure to show that her Kisqali and Savings Card Website activity data was actually used to serve personalized ads, *see supra* 1-6, 9, the allegations do not show

further transmission of data beyond the Technology Providers.[6] *See* CAC ¶ 33.

**B. Breach of Confidentiality and Fiduciary Duty (Counts II and III).**

Because NPC is not a "medical provider," and Plaintiff is not NPC's "patient," there is no confidential or fiduciary duty relationship that is an essential predicate to these claims. Mot. 25-26. Plaintiff's cases, Opp. 19-23, just reinforce this point.[7] Unsurprisingly, Plaintiffs have not cited a single decision finding that a pharmaceutical manufacturer has a confidential or fiduciary relationship with website visitors. Indeed, *Adair v. CIGNA Corp. Services, LLC*, 818 F. Supp. 3d 641 (E.D. Pa. 2026) helps NPC. It ruled that a confidential relationship existed because the plaintiffs alleged they "ceded decision-making control to" the defendant health insurer. *Id.* at 672. NPC exercised no such control over decisions about medical care

[6] Plaintiff's cited cases, Opp. 16-17, all miss the mark. *Brahm v. Hosp. Sisters Health Systems*, 2024 WL 3226135, at *1 (W.D. Wis. June 28, 2024) and *Theys v. Dental Intel., Inc.*, 2026 WL 636743, at *1 (N.D. Ill. Mar. 6, 2026) concern provider disclosures of patient data. *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 795 (N.D. Cal. 2019) found no "consent" to the alleged disclosures. And *Smith v. Datla*, 451 N.J. Super. 82, 100 (App. Div. 2017), only addresses a statute-of-limitations question.

[7] *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *4 (S.D.N.Y. June 25, 2025), found that Teladoc was a medical provider because it offered "telehealth, medical opinions" and "remote medical care." Similarly, *Wallace v. Health Quest Systems, Inc.*, 2021 WL 1109727, at *12 (S.D.N.Y. Mar. 23, 2021), held that legal duties spring from the "confidence that is inherent in the physician-patient relationship." In *Toy v. Life Line Screening of America, Ltd.*, 2024 WL 1701263, at *3 (N.D. Cal. Mar. 19, 2024), there was—unlike here—no "express contract" to preclude plaintiff's breach of confidence claim. In *Gay v. Garnet Health*, 2024 WL 4203263, at *5 (S.D.N.Y. Sept. 16, 2024), Opp. 22, the plaintiffs alleged they were "patients of the Defendant," allegations which do not and cannot exist here.

or insurance coverage here; NPC provided information and financial assistance to website visitors—including individuals who were already "patients" of third-party medical providers—and informed them about technologies operating on the websites and how to opt out of targeted ads and Google Analytics. *Supra* 2.

**C. Negligence (Count IV).**

Plaintiff cannot prop up her negligence claim by asserting that NPC violated a duty to exercise reasonable care to safeguard information. Mot. 27-28. That alleged duty, Opp. 18–19, is based on data breach cases, which concern the exercise of reasonable care to protect data from criminal hackers, and has nothing to do with alleged use of analytics and related technologies on public websites. Opp. 11, 23, 26. Nor have Plaintiffs alleged cognizable damages. Mot. 28–29.

**D. Implied Contract (Count V).**

Plaintiff's implied contract claim should be dismissed at the outset because an existing contract governs Plaintiff's use of the Kisqali and Saving Card Websites. Mot. 29–30. Plaintiff ignores NPC's legal authority, *see* Opp. 23–24, and the cases she cites are clearly inapposite. *In re BetMGM Data Breach Litigation*, 2024 WL 5710661, at *4 (D.N.J. Nov. 20, 2024) has no application here, where the parties entered into agreements governing the use of website activity data. Similarly, *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 390 (D.N.J. 2015), applies only where, unlike here, there is a dispute over the meaning of contract terms.

Plaintiff's claim that NPC "surreptitiously" facilitated the collection of data fails because the disclosures discussed above clearly described the data practices at issue. *See supra* 1-6; Opp. 24. Plaintiffs also have not shown damages proximately caused by any alleged breach of contractual terms. Mot. 29.

### E. Unjust Enrichment (Count VI).

NPC identified several independent reasons to dismiss Plaintiff's unjust enrichment claim. Mot. 30–32. Plaintiff never addresses two of those: Plaintiff got the benefit she sought—the Savings Card—and she did not expect remuneration for the data. Mot. 31–32; Opp. 25–26. Either suffices to dismiss. The arguments Plaintiff actually makes also fall short. Whether Plaintiff must show a "loss," Opp. 26, is beside the point, because retention of an alleged benefit must be "unjust," *Gaddy v. Long & Foster Cos.*, 2022 WL 22894854, at *12 (D.N.J. Mar. 16, 2022), and "[r]etention is unjust" only "when the plaintiff expects payment," or "the defendant retains a benefit at the expense of the plaintiff[,]" *Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 535 (D.N.J. 2019), which Plaintiff never shows.

### F. Wiretap Act (Count VII).

Plaintiff does not dispute that she cannot pursue a procurement theory of liability under the statute. With respect to direct liability, Plaintiff's theory is at odds with the CAC and how websites actually function, as Plaintiff alleges that it was the Technology Vendor's code—not NPC—that directed visitors' browsers to send data

to third-party servers. *See* CAC ¶¶ 32–37; *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016) (explaining website server communications). Further, Plaintiff does not dispute that NPC consented to use of the Website Technologies or that NPC was a party to the alleged communications. Mot. 33–35; Opp. 26–27. That leaves the crime-tort exception, which has no application here.

*First*, there is no alleged tortious or criminal act separate from the alleged interception. Mot. 36–37. Plaintiff's argument that NPC's alleged HIPAA violation was separate from the alleged interception, Opp. 32, ignores the fact that NPC did not disclose any data—it was the Technology Vendors' code that allegedly directed the transmissions—and that NPC is not a healthcare provider subject to HIPAA as a covered entity, business associate, or otherwise. *See supra* 10; Mot. 38–39 (explaining Plaintiff's failure to allege that NPC engaged in electronic HIPAA standardized transactions). Plaintiff's bald claim that "Novartis is a covered entity under HIPAA," Opp. 31, does not make it so.

Equally unavailing is Plaintiff's reliance on the New Jersey Data Privacy Law ("NJDPL"). Opp. 31–32. That statute cannot serve as the predicate for the crime-tort exception because it does not include criminal penalties or a private right of action, N.J. Stat. §§ 56:8-13; 56:8-166.19, and enforcement is limited to the Attorney General. *See In re Gauthier*, 222 A.3d 707, 710 (N.J. Super. App. Div. 2019) (statute must be explicit to modify tort law). Even if the NJDPL could serve as the predicate,

the CAC contains no allegations showing violation of the statute, *see* CAC ¶ 207 (listing "tortious acts"), and Plaintiff consented to the alleged data transmissions.

*Second*, Plaintiffs have not shown that NPC was primarily motivated to commit a crime or a tort. Mot. 37–38. Alleging that the purported interception also happened to violate another law is insufficient. Mot. 37 (citing cases). Tellingly, Plaintiff's reference to blackmail undercuts her position. Opp. 28–29. The blackmailer may want to make money, but they do so by purposefully threatening the victim to get the cash. That is a separate crime. Here, the allegations in the CAC do not show that NPC was primarily motivated by a desire to violate HIPAA by sharing sensitive data with third parties. NPC is not a HIPAA-regulated entity, and NPC's alleged purpose of analytics and advertising is not itself unlawful.[8] It is no surprise, therefore, that the government has yet to charge a single Wiretap Act felony based on use of the Website Technologies by an entity in the healthcare sector, let alone on a pharmaceutical company's website.

## CONCLUSION

NPC respectfully requests that this case be dismissed with prejudice.

---

[8] *See Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483, at *3–4 (D. Mass. Mar. 10, 2026) (finding no "purpose" to violate HIPAA or perpetrate "a tort"); *Nichols v. PeaceHealth Networks on Demand LLC*, 2026 WL 607763, at *10 (W.D. Wash. Mar. 4, 2026) (similar); *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (similar); *Williams v. TMC Health*, 2024 WL 4364150, at *4–5 (D. Ariz. Sep. 30, 2024) (similar); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (similar).

Dated: July 13, 2026

Respectfully submitted,

/s/ Scott S. Christie
**McCARTER & ENGLISH, LLP**
Scott S. Christie
Christopher A. Rojao
Ryan M. Savercool
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Telephone: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
crojao@mccarter.com
rsavercool@mccarter.com

Jasmeet K. Ahuja (*pro hac vice)*
**HOGAN LOVELLS CADWALADER US LLP**
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone: (267) 675-4667
jasmeet.ahuja@hlc.com

Adam A. Cooke (*pro hac vice)*
**HOGAN LOVELLS CADWALADER US LLP**
555 13th St NW
Washington, DC 20004
Telephone: (202) 637-5479
adam.a.cooke@hlc.com

*Attorneys for Defendant Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, copies of the foregoing Defendant's Motion to Dismiss were served via ECF to all counsel of record.

*/s/ Scott S. Christie*
Scott S. Christie
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Telephone: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
*Counsel for Defendant Novartis Pharmaceuticals Corporation*